## COMMONWEALTH *versus* FRANCIS CALL.

A married man having sexual intercourse with an unmarried woman, is guilty of adultery, whether viewed as an indictable offence, or as a cause for divorce.

In the case of an indictment, a special verdict finding the defendant guilty of the offence, but not finding him guilty in the county where it is alleged to have been committed, cannot be supported.

Such a verdict will not operate as an acquittal, but the accused must be again put on his trial.

THE defendant was tried in the Municipal Court upon an indictment for adultery committed within the county of Suffolk, and the jury returned the following special verdict, dated the 23d of March, 1838, and signed by the foreman : " The jury find the defendant guilty of having had sexual intercourse with Eliza Foster, the person named in the indictment, she at the same time being an unmarried woman, and the defendant being a married man and having a lawful wife at the time then living."

The defendant moved in arrest of judgment, and for cause assigned, that the facts set forth in the verdict might be adjudged not to constitute the crime of adultery, and that the prisoner was not guilty in manner and form alleged in the indictment.

The court overruled the motion in arrest, and passed judgment upon the special verdict, " that the facts set forth in said special verdict did constitute the crime of adultery, and that by said verdict the jury had found the prisoner guilty in manner and form alleged in the indictment." To this judgment the defendant excepted.

*Gleason*, for the defendant. The special verdict will not *March 7th.* support the judgment, because it does not find the time when the alleged offence was committed, nor that it was committed in the county of Suffolk. 1 Chit. Crim. Law, 556, 564 ; *The King* v. *Hazel*, 1 Leach, 406, 425.

The fact found, of sexual intercourse between a married man and an unmarried woman, does not constitute adultery, considered as an indictable offence. It is otherwise, when viewed as a ground of divorce. 3 Bl. Comm. 139, 140 ; Wood's Civ. Law, 272 ; 2 Swift's System, 327 ; Ancient Charters &c. 59, 277 ; Revised Stat. c. 130, § 1 ; *Commonwealth* v. *Putnam*, 1 Pick 140.

Common-
wealth
*v.*
Call.

*Austin,* Attorney-General, *contrà.* The time and place not being mentioned in the special verdict, the conclusion of law is, (as in the case of a general verdict of *guilty,*) that they were the time and place set forth in the indictment. "The jury cannot find an offence in another county than where it is alleged." Com. Dig. *Pleader, S* 13. In the case at bar, therefore, by finding the offence, they find it was committed in Suffolk, where it is alleged. The case of *Hazel,* in Leach, contains merely a suggestion of *one* of the judges to the contrary.

The facts found constitute adultery, under the Revised Stat. *c.* 130, § 1. In *Commonwealth* v. *Merriam,* 14 Pick. 518, the woman was not married, but the point now made was not raised, it being taken for granted that the intercourse of a married man with an unmarried woman subjected him to an indictment for adultery. See *Brisco* v. *Brisco,* 2 Addams, 263, and *Chettle* v. *Chettle,* 3 Phillimore, 509.

*March* 18th. DEWEY J. delivered the opinion of the Court. The counsel for the prisoner contends, that upon the special matter found by the jury on the trial of this cause, it was not competent for the Municipal Court to enter a judgment, that the jury had found the prisoner guilty of the crime of adultery in the manner and form alleged in the indictment.

The matter thus found is alleged to be insufficient for two reasons : —

1. That the facts of which the jury have found the prisoner guilty, do not constitute the crime of adultery :

2. That it does not appear that the offence was committed within the county of Suffolk.

The statute of this Commonwealth making adultery an offence punishable in the common law courts, has not given a definition of this crime. Such is generally the case in our criminal code, as to the higher crimes. They are not defined in our statute book, but are assumed to be well known as offences at common law, and under the general term denoting the offence, it is declared by law to be a crime, and the mode of trial and measure of punishment are alone prescribed by statute.

If questions arise in such cases as to what constitutes the offence, recurrence is to be had to well-established definitions

sanctioned by books of authority and adopted by long usage, and with reference to which it may be supposed the legislature have acted in the enactment of the law punishing the offence.

It so happens, that on the present question we derive less aid than usual from the lights of the common law, the crime of adultery not being cognizable by the temporal courts in England as a public offence, but only as a private injury ; and hence we have not that distinct character of this crime, well defined and made familiar to us by the books of common law, that would be found to exist in relation to other offences.

By the civil law, adultery could only be committed by the unlawful sexual intercourse of a man with a married woman. Thus, as is stated in Wood's Institute, 272, adultery is a carnal knowledge of another man's wife, and the connexion of a married man with a single woman does not make him guilty of the crime of adultery.

On the other hand, in the English ecclesiastical courts it is held that the offence of adultery is established by showing that the husband has had illicit intercourse with any person, and no distinction is taken whether the alleged offence was committed with a married or unmarried female.

Such is the general rule in cases of divorce granted for the cause of adultery, not only in England, but also, as I suppose, throughout the United States. Our ancient colonial statute (of 1646) punished with death the " crime of adultery with a married woman or espoused wife." The offence punishable by this law clearly would not have embraced the present case. Under the provincial statutes the punishment was much mitigated, and the offence described under the general term adultery, without the additional description of the offence being committed with a married woman. The earliest statute on the subject after the adoption of the constitution, *St.* 1784, *c.* 40, contains, as was usual at that period, a preamble setting forth the objects of the statute, among which is stated that of enforcing " the due observance of the marriage covenants," thus indicating its general application to both the parties, rather than the more limited object of punishing the infidelity of the wife merely. This statute also punished the offence under the general term of adultery.

The statute of 1785, *c.* 69, authorized a divorce from the bonds of matrimony for adultery in either of the parties ; and it is to be observed, that the same descriptive term is here used as in the statute making the offence a crime punishable in the courts of law, and the words are in no degree more extensive. The question naturally arises, whether it may not be fairly inferred that the legislature, using the same term, in two successive political years, as descriptive of an offence, did not intend that the same offence should be indicated by it in both cases. But as to the construction of the term adultery in the statute last cited, it has always been held to include the case of any unlawful intercourse by a married man.

Much light is also thrown upon the present question by the Revised Stat. *c.* 130, § 1, which is the existing law on the subject, and wherein it is provided, in addition to the former statute punishing the crime of adultery, that " when the crime is committed between a married woman and a man who is unmarried, the man shall be deemed guilty of adultery." This addition to the former statute provisions would be entirely unnecessary, if the definition of adultery were such as is alleged by the counsel for the prisoner. If the civil law definition of this crime had been adopted here, the unmarried man might for such an offence well be holden guilty of the crime of adultery, without this additional statute provision.

But it is well understood to have been the law of this Commonwealth prior to the Revised Statutes, that if the party was not a married man, the offence of having unlawful intercourse with a married woman would not be adultery in him. 6 Dane's Abr. 676.

We think it will be found that the same construction has been given to the statute of 1784, *c.* 40, as to that of 1785, *c.* 69, authorizing divorces for adultery, and that it has been uniformly holden that the same offence which would subject the party to a divorce, would also sustain an indictment for the crime of adultery. Such certainly has been the rule practised upon in our criminal courts for many years, and although several convictions in such cases are remembered, no exceptions have been taken, bringing the question before this Court for revision.

The late Solicitor-General *Davis*, who was a very good

criminal lawyer, and had the benefit of thirty years' experience in the office of public prosecutor, so understood the construction given by the court to the statute punishing this offence, as is apparent from the Precedents published by him at the close of his official duties, wherein are found forms of indictments for adultery, distinctly adapted to the case where the offence is committed by a married man with a single woman. Davis's Precedents, 48.

Whatever, therefore, may have been the original meaning of the term adultery, it is very obvious that we have in this Commonwealth adopted the definition given to it by the ecclesiastical courts, and this not merely in relation to divorces, but also as descriptive of a public crime. We hold the infidelity of the husband as well as that of the wife, the highly aggravated offence, constituting the crime of adultery. Familiar as the legislature must be supposed to have been with this construction of the statute of 1784, c. 40, they sanctioned in the Revised Statutes the same form of expression, without any restriction of the extended application given to it by the courts of law, and making no other alteration except that already referred to, enlarging its application so as to include within it the case of the unmarried man who should commit the offence with a married woman. The Court are satisfied that by the proper construction of the term adultery as used in our statutes, the offence is committed by a married man who shall have sexual intercourse with an unmarried woman.

Applying this rule of law to the facts specially found by the jury, they establish the crime of adultery to have been committed by the prisoner.

This brings us to the second objection taken to the sufficiency of this verdict, which is, that the jury have not found that the offence charged upon the prisoner was committed within the county of Suffolk.

It is a very familiar principle in the administration of the criminal law, that all the circumstances essential to sustaining the indictment must be expressly found by the jury, and the court cannot supply a defect in the finding of the jury by intendment or implication. 1 Chitty's Crim. Law, 544 ; Bac. Abr. *Verdict*, D.

It is equally clear, that it must always appear that the jury have found the offence was committed within the county in which the indictment is found, or the court cannot give judgment against the prisoner. 1 Stark. Cr. Pl. 354 ; *The King* v. *Hazel*, 1 Leach, 406.

In the ordinary case of a general verdict of *guilty*, the jury, by the very terms of their verdict, find the prisoner guilty of all the material allegations in the indictment. Not so in a special verdict, for the very object of this departure from the usual form, is presumed to be for the purpose of declaring the prisoner guilty of certain facts only, with a view of submitting the question, whether those facts authorize a general verdict of *guilty*, to the judgment of the court. In such a case, if the facts thus found do not include all the essential elements of the offence charged upon the prisoner, he cannot be convicted.

The finding of the jury in the present case shows the defendant guilty of acts constituting the crime of adultery, but is entirely defective as to the fact where the crime was committed. The facts found by the jury may all be truly found, and yet they may have occurred in an adjacent county, or out of the Commonwealth. We cannot judicially know that the offence was committed in the county of Suffolk, the jury not having so said either directly, or by any reference to the indictment in their verdict

The Court are therefore of opinion, that it was not competent for the Municipal Court to render a judgment upon this verdict, that the jury had found the prisoner guilty of the offence as charged in the indictment, and to this extent the exception taken to the ruling of the judge must be sustained.

The only remaining inquiry is, whether this defect in the finding of the jury entitles the prisoner to a judgment as upon a verdict of not guilty.

The finding of the jury here was altogether an imperfect and defective finding, and therefore not available either to the government as a verdict of guilty, or to the prisoner as a verdict of acquittal. It neither affirms nor denies as to the truth of any allegations in the indictment, other than as to the facts specially stated in the verdict. Had it found the prisoner not guilty except as to the matter thus specially stated, it would have

been effectua .o discharge the prisoner and would be tanta-
mount to a verdict of acquittal ; but in its present form it can-
not operate as such, and the result will be, that the prisoner
must be put again on his trial. 1 Chitty's Crim. Law, 646 ;
*Rex* v. *Woodfall*, 5 Burr. 2661 ; *Rex* v. *Hayes*, 2 Ld. Raym.
1522.

The bill of exceptions is sustained, and the case remanded
to the Municipal Court for a new trial.