## TRIAL FOR HAVING POSSESSION OF STOLEN GOODS.

[Circuit Court of Summit County.]

### PASQUALE CARANO v. STATE OF OHIO.

Decided, October Term, 1902.

*Criminal Law—Burglary and Larceny—Knowingly Receiving Stolen Goods—Mistake in Verdict as Rendered—Qualification of Jurors—Circumstantial Evidence—Effect of Having Stolen Goods in Possession.*

1. The language of a verdict should not be strained and a prisoner held to have been acquitted, where it is clear that the jury did not intend to find him not guilty, and it is not error in such a case to overrule a plea in bar against further proceedings.

2. The fact that a juror has served upon the trial of a plea in bar is not a ground for challenge upon the subsequent trial of the accused under the indictment, the trial of the plea in bar not being a trial of the cause within the meaning of Section 7278.

3. A juror who states that he has formed an opinion as to the guilt of the accused, but who believes that he can render an impartial verdict is not subject to challenge for cause, but is within the exception of the second paragraph of Section 7278.

4. Where it is admitted by the defendant that he has stolen goods in his possession, it is not error to refuse to charge with reference to circumstantial evidence tending to trace the goods from the place where they were stolen to his house.

5. It is not error to admit evidence as to packing material being seen in the car from which the goods were stolen, when it appears that some of the material was scattered between the car and the house of the defendant in which the goods were discovered.

6. Possession of stolen goods by a defendant soon after the theft was committed, raises a presumption against him which calls for an explanation as to how he came into possession of the goods.

MARVIN, J.; HALE, J., and CALDWELL, J., concur.

Error to the court of common pleas.

The plaintiff in error was indicted at the January Term, 1902, of the court of common pleas of this county, there being two counts in the indictment. The first count charged burglary and larceny, and set out in proper form that the defendant committed such burglary and larceny by breaking into a railroad car in the night season and taking therefrom a consider-

able quantity of goods, all set out in the indictment, and the charge is that this was done unlawfully, maliciously and forcibly; in short, everything necessary to constitute the crime of burglary and larceny is this count of the indictment.

The second count of the indictment charges the plaintiff in error with having received the same goods named in the first count of the indictment, and that he so received them knowing them to have been stolen.

To this indictment, and to each count of it, Pasquale Carano pleaded not guilty. He was put upon his trial before a court and jury, and at the close of the evidence and after argument of counsel and the charge of the court the jury retired, and upon coming again into court returned the following verdict: * * * "do find that the prisoner at the bar, Pasquale Carano, is guilty of receiving stolen goods valued at $48.84, and do not find as charged in the first and second counts in indictment. S. P. Thompson, *Foreman.*" Thereupon the court inquired of the jury if some mistake had not been made in their verdict, to which the foreman of the jury replied that they had made a mistake. The jury were then instructed to retire to their room and agree upon a verdict, which should be responsive to the indictment. The jury then retired again to their room, and upon again coming into court returned a verdict in which they found that the prisoner "is guilty as he stands charged in the second count in the indictment, and not guilty as he stands charged in the first count in the indictment, and fix the value of the goods at $48.84. S. P. Thompson, *Foreman.*"

A motion was then made by defendant that he be discharged, notwithstanding the verdict, and for cause say, that the verdict first returned by the jury was, in effect, a verdict of not guilty, and that the court had no authority to require further verdict of the jury. This motion the court overruled, and error is charged in that regard.

Thereafter a motion was made by the plaintiff in error for a new trial, and this motion was granted. Carano was then called upon again to plead to the indictment, and he thereupon filed a plea in bar to any further proceedings under the indictment,

setting up the return of the verdict first herein before quoted, the claim again being made that this verdict was equivalent to a finding by the jury that he was not guilty as charged in the indictment. This plea in bar was submitted to a jury, and the evidence adduced established substantially what has been already said as to the occurrences at the time of the return of the first verdict in the case. At the close of this evidence the court directed the jury to return a verdict upon the issue of the plea in bar against the defendant, and error is claimed in this regard.

The question then raised as to all the proceedings thus far set out in this opinion is whether or not the first verdict returned by the jury was such as to preclude further proceedings against the prisoner. If the verdict was, in legal effect, a return by the jury of not guilty as to each of the counts in the indictment, then the prisoner was entitled thereupon to be discharged. If this is not the legal effect of the verdict, then the action of the court in directing the jury to return to its room and further consider its verdict, and in directing the jury in the trial upon the plea in bar to return a verdict for the state, was right.

The verdict originally returned is peculiar, and there can be little doubt that it was returned under a mistake on the part of the jury; indeed, Mr. Thompson, who was the foreman of the jury, so stated to the court at the time it was returned when inquiry was made of the jury as to whether or not a mistake had been made. This appears from evidence taken upon the trial of the plea in bar, as shown at page 17 of the bill of exceptions. It clearly was not the intention of the jury to find the prisoner not guilty as to the second count in the indictment, notwithstanding which, if they have said by their verdict that he was not guilty as charged in either the first or the second count, then the plea in bar was well taken, and the prisoner was entitled to his discharge. Where, however, it is clear that the jury did not intend to find the defendant not guilty, the language of the verdict is not to be strained to make it result in an acquittal. The language is that the jury "do not find as charged in the first and second count in indictment." Tech-

nically, this is a statement of the jury that they make no finding as to whether the defendant was guilty or not under either count in the indictment.   What precedes this in the verdict clearly shows that they did intend to find him guilty of the offense charged in the second count in the indictment, but they were mistaken as to this being the second count.

As has already been said, if the verdict stated that they found him not guilty as charged in this second count, then, though a mistake was made, the prisoner would have been entitled to be discharged; but it would be a straining of words to make the language used in the last part of the verdict a finding that the prisoner was not guilty as charged in the second count.

The court, therefore, did not err in refusing to discharge the prisoner, nor in charging the jury on the trial of the plea in bar to return a verdict against the defendant.

This view is supported by the case of *Commonwealth* v. *Call*, 38 Mass. (21 Pick.), 509, and in *State* v. *Arthur*, 21 Ia., 322, 323.   In this last case the prisoner was tried upon an indictment charging him with having in his possession at the same time five or more pieces of false and counterfeit money, etc. The verdict returned was that the defendant is "guilty of having had in his possession five half dollars, four of them counterfeit coin, one doubtful, and two quarter dollars counterfeit coin, with intent to pass the same."   On page 325 the court, in discussing the case, speak of this verdict and say that it 'was fatally defective in failing to find that the prisoner had this counterfeit coin with a knowledge, etc., and say:

"It partakes of the nature of a special verdict. '   s it certainly is, rather than a general verdict, as defined by the statute.   Assuming it to be such, then, as it did not pronounce affirmatively or negatively on the facts necessary to enable the court to give judgment, the order should have been that they 'retire for further deliberation.' "

The verdict against the prisoner having been returned on the trial on the plea in bar, the prisoner entered the plea of not guilty, and the court proceeded to impanel the jury; and upon this second trial a verdict of guilty as charged in the second count of the indictment was returned.   A motion for a new

trial was made and overruled, and judgment and sentence were pronounced upon the verdict.

Complaint is made that the court erred in the impanneling of the jury for this trial. The jury was made up chiefly, if not altogether, of those who constituted the jury upon the trial of the plea in bar, and each juror was challenged for that cause. Section 7278, Revised Statutes, provides for what causes a juror may be challenged. Among those, the fifth reads:

"That he served on a petit jury that was drawn in the same cause against the same defendant, and which jury was discharged after hearing the evidence, or rendered a verdict which was set aside."

It is this clause of the section which, it is said, the court disregarded in impanneling this jury. It is clear that the jurors challenged did not come within the letter of this clause of the section. No one of them had served as a juror in the same cause. The cause for which this jury was impanneled was the prosecution by the state against the prisoner under the indictment. That cause had not been tried to this jury, nor to any of these jurors. No evidence tending to prove or disprove the guilt of the prisoner had been heard upon the trial of the plea in bar; nothing had transpired upon that trial calculated to show either that the prisoner was or was not guilty as he was charged in the indictment; and if the several jurors were (as for all that had transpired in that case, they well might be) unprejudiced, there was no ground for challenge.

It is especially urged that as to the juror, Mr. Wuchter, the court erred, because upon his examination at the time the jury was impanneled he made certain answers to questions put to him. The questions put to him were in reference to the hearing upon the plea in bar, and this was asked of him:

"Mr. Wuchter, you heard what took place yesterday in regard to this case; I will ask you if what you heard, what you saw, left any impression upon your mind in regard to the guilt or innocence of this defendant of receiving stolen property which would require evidence to remove from your mind?"

To this he answered: "Well, it might be possible."

Question: "Then, as I understand, you say it is possible that an impression as to the guilt or innocence of the defendant was left upon your mind which might require evidence to remove from your mind?"

To this Mr. Wuchter answered: "Yes, sir; I think so."

Mr. Wuchter was then sworn and was questioned, and he answered that no impression which was upon his mind resulted from any conversation that he had with the defendant or with any witnesses in the case so far as he knew. He says further, that he did not get any impression from reading any newspaper articles, and still further he was asked this question:

"Now then, do you think that, notwithstanding that, you could fairly and impartially try this defendant and render a fair and impartial verdict; without reference to that, do you think you could do that?"

To this he answered: "I think I could do that; yes, sir."

Upon further questioning he emphasizes the statement that he thinks he could try the case impartially, and challenge as to him was overruled. The juror seems to have brought himself clearly within the exception provided in the second paragraph of Section 7278, Revised Statutes, which reads:

"* * * but if a juror has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall thereupon proceed to examine such juror on oath as to the grounds of such opinion, and if such juror shall say that he believes he can render an impartial verdict notwithstanding such opinions, and if the court is satisfied that such juror will render an impartial verdict on the evidence, may admit him as competent to serve in such case as a juror."

There was no error in the ruling of the court in this regard.

Complaint is further made that the court erred in admitting certain evidence produced by the state and admitted over the objection of the plaintiff in error. Especial attention is called to the witness, Goodenberger, whose testimony begins on page 83. The testimony specially complained of, however, is found on page 86. The witness was a police officer of the city of Akron and was one of those who found that the car, from which

it was said that goods, for the concealing of which the prisoner was on trial, were taken, had been broken open, and this question was put to him:

"Do you remember of finding any packing material about the floor of either of these cars?"

This was admitted over the objection of the defendant. There was no error to the prejudice of the prisoner in the ruling of the court upon this question. As appeared further on in the case, it was sought to show that there was packing material found in the car, and that such material was scattered along the pathway leading from this car to the house of the defendant in which the goods in question were found by the officers.

Similar complaint is made as to testimony about letters which it is claimed were scattered along this pathway. Each of these circumstances tended to show that the goods were carried from the car from which they were taken to the house of the defendant, and it would have been clearly competent to introduce such circumstances in evidence, but for the admission on the part of the prisoner that the goods found at his house were those taken from the car. On the prisoner's part the claim was made that he purchased the goods of a peddler who came to his house very early in the morning carrying what must have been, as the exhibits in this case show, a tremendously large and heavy package of goods. The state claimed that if the prisoner did not commit the burglary and larceny, it was committed by others living in his house, and evidence tending to show that the goods were carried directly from this car to the house of the prisoner was pertinent as tending to show his knowledge of the way in which those who brought him the goods obtained them.

Without going over severally the other questions as to the rulings upon evidence shown by the bill of exceptions, the court finds no error as to any ruling upon questions of evidence.

Complaint is further made that the court erred in refusing to charge as requested by the defendant; especially, it is said, that there was error in refusing to give the fifth request made. That reads:

"The evidence for the state in this case being largely what is known as circumstantial evidence; that is, a chain of facts and circumstances from which you are asked to infer the guilt of the defendant. You should not convict the defendant on such evidence unless these facts and circumstances, taken in connection with all the other evidence in the case, are consistent with each other and with the guilt of the defendant, and are wholly inconsistent with the innocence of the defendant on any reasonable hypothesis."

There are cases in which this charge would have been eminently proper. In this case it would have been likely to mislead the jury, if it had any effect upon them whatever. This was not an ordinary case of circumstantial evidence. The fact that the goods taken from the car were, shortly thereafter, found in the possession of the prisoner, did not at all depend upon circumstances. As has already been said, that was admitted. This admission raised so strong a presumption against the prisoner as to call upon him to explain how he came into possession of the goods.

It is true, as said in the case of *Methard* v. *State*, 19 Ohio St., 363, that "the facts of burglary, or larceny, and of possession of the stolen goods soon thereafter by the accused, do not alone raise a *presumption of law* that he is guilty of both the burglary and larceny."

In the opinion in the same case, on page 368, this language is used:

"The fact that a building was burglariously entered, goods stolen therefrom, and the possession by the accused soon thereafter of the goods stolen, are competent evidence to go to the jury, and, in connection with other circumstances indicative of guilt, such as giving a false account, or refusing to give any account, of the manner in which, or the means by which, he came into possession of the stolen goods, that may afford a strong *presumption of fact* of the guilt of the accused, and warrant the jury in finding him guilty of both the burglary and larceny."

In Lawson Pres. Ev., 519, the following quotation is made from Hale's Pleas of the Crown:

"As a general proposition, where the person is in possession of property, it is reasonable to suppose that he is able to give an account of how he came by it, and when the property in question has belonged to another, it is, in general, not unreasonable to call upon him to do so. If the change of possession has been recent, he will not be likely to have forgotten, still less if it be an article of bulk or value. If, then, it be reasonable under such circumstances to call upon the party in possession to account for such possession, it can not be unreasonable to presume against the lawfulness of that possession when he is unwilling to give an account, or is unable to give a probable reason why he can not."

In 1 Roscoe Crim. Ev. (side paging), 21, it is said:

"If the property be proved to have been stolen, or may fairly be presumed to have been so, then the question arises whether or not the prisoner is to be called upon to account for the possession of it. This he will be bound to do, and, on his failing to do so, a presumption against him will arise, if taking into consideration the matter of the goods in question they can be said to have been recenly stolen. The presumption will be either that he stole the property, or that he received it, knowing it to be stolen."

If the state had been depending upon circumstances to show that the goods came into the possession of the prisoner shortly after they were stolen, the request might well have been taken, but that was a conceded fact in the case, and hence the rule which would be applicable to the case of tracing the goods to the defendant by circumstances is not applicable in this case. The charge given to the jury stated the law applicable to the case, and so stated it that if followed by the jury, no mistake would be made. There was no error in refusing to charge as requested, and no error, for which the case should be reversed, in the charge given to the jury.

As to the motion for a new trial upon the facts of the case, there was clearly no error in overruling the motion. Whoever reads the record of the case will have very little doubt but that the conviction was right, and surely no court would be justified in saying that the jury might not have been satisfied beyond a reasonable doubt of the guilt of the prisoner.

The judgment of the court of common pleas is affirmed.

*Wilson & Grant* and *W. A. Spencer,* for plaintiff in error.

*H. M. Hagellbarger,* Prosecuting Attorney, and *C. S. Cobbs,* for the state.